UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EDITH L. COLEMAN,<br><br>                    Plaintiff,<br><br>         v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>                    Defendant. | CASE NO. 13-cv-05568 BHS<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: July 25, 2014 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 14, 15, 18).

After considering and reviewing the record, the Court finds the ALJ erred in evaluating the medical opinion evidence from Keith Krueger, Ph.D. and Michael Brown, Ph.D.. Because these errors were not harmless, this matter should be reversed and

remanded, pursuant to sentence four of 42 U.S.C. § 405(g), to the Acting Commissioner for further consideration.

## BACKGROUND

Plaintiff, EDITH L. COLEMAN, was born in 1965 and was 44 years old on the alleged date of disability onset of January 24, 2010 (*see* Tr. 163). Plaintiff completed high school and completed some college courses (Tr. 60). Plaintiff has work experience as a housekeeper and babysitter (Tr. 52-53, 57-58, 81). Plaintiff's last employment was as a housekeeper in a hospital and was terminated when a background check disclosed two DUIs (Tr. 45, 48-49, 57-58). At the time of the hearing, plaintiff was living in a house with her daughter and two grandchildren (Tr. 47).

According to the ALJ, plaintiff has at least the severe impairments of "generalized anxiety disorder, multilevel degenerative disk disease of the lumbar spine and scoliosis, status post anterior cervical discectomy and fusion (20 CFR 404.1520(c) and 416.920(c))" (Tr. 24).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* Tr. 163-66, 105-09, 110-16). Plaintiff's requested hearing was held before Administrative Law Judge Robert P. Kingsley ("the ALJ") on March 13, 2012 (*see* Tr. 39-88). On May 17, 2012, the ALJ issued a written decision in which the

ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.18-38).

On May 9, 2013, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-8). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in July 2013 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on December 5, 2013 (*see* ECF Nos. 9, 10).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ properly evaluated the medical evidence; (2) Whether or not the ALJ properly evaluated plaintiff's testimony; (3) Whether or not the ALJ properly evaluated the lay evidence; (4) Whether or not the ALJ properly assessed plaintiff's residual functional capacity; (5) Whether or not the ALJ erred by basing his step five finding on a residual functional capacity assessment that did not include all of plaintiff's limitations; and (6) Whether or not the new evidence that was submitted to the Appeals Council shows that the ALJ's decision was not supported by substantial evidence and/or was based on legal error (*see* ECF No. 14, pp. 1-2).

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1)   Whether or not the ALJ properly evaluated the medical evidence.

Examining physician Keith Krueger, Ph.D. evaluated plaintiff in February 2010 on behalf of the Washington State Department of Social and Health Services (Tr. 273-82). Dr. Krueger diagnosed plaintiff with Anxiety Disorder NOS, Major Depression, Cocaine and Alcohol dependence, in remission, and Borderline Personality Disorder, and measured plaintiff's GAF score at 48 (Tr. 275). Dr. Krueger opined that plaintiff would have marked limitations in relating appropriately to co-workers and supervisors and responding appropriately to and tolerating the pressures and expectations of a normal work setting (Tr. 276).

Examining physician Michael Brown, Ph.D. evaluated plaintiff on October 28, 2011, again on behalf of the Washington State Department of Social and Health Services (Tr. 665-69). Dr. Brown diagnosed plaintiff with Major Depression, PTSD, Anxiety Disorder NOS, and Polysubstance Abuse in remission, and he measured plaintiff's GAF score at 47 (Tr. 667). Dr. Brown opined that plaintiff would be markedly limited in her ability to communicate and perform effectively in a work setting with public contacts and in a work setting with limited public contacts, as well as in her ability to maintain appropriate behavior in a work setting (Tr. 668).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when a treating or examining physician's opinion is contradicted, as they are here (*see* tr. 29), that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ gave little weight to the opinions of Dr. Krueger and Dr. Brown and found that the evaluations were largely based on plaintiff's self-reported symptoms and complaints, which he did not find entirely credible. *Id.* The ALJ also noted that the evaluations were performed to determine plaintiff's eligibility for state assistance and found that this gave plaintiff an incentive to overstate her symptoms (Tr. 30). The ALJ further discredited the opinions noting that they were check-box forms and finding them to contain few objective findings. *Id.* Finally, the ALJ noted that plaintiff's daily activities further undermined the opinion. *Id.* Plaintiff argues these were not specific and legitimate reasons to discredit the opinions (ECF No. 14, pp. 11-12). This Court agrees.

"A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been" discounted properly. *Morgan, supra,* 169 F.3d at 602 (*quoting Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (*citing Brawner v. Sec. HHS*, 839 F.2d 432, 433-34 (9th Cir. 1988))). However, like all findings by the ALJ, a finding that a doctor's opinion is based largely on a claimant's own accounts of his symptoms and limitations must be based on substantial evidence in the record as a whole. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Although plaintiff challenges the ALJ's credibility determination, the ALJ's reasoning fails because his finding that the opinions were based on subjective statements and not supported by objective findings is not supported by substantial evidence.

Dr. Krueger performed testing including a Mental Status Examination, Personality Assessment Inventory, and Inventory of Altered Self-Capacities prior to rendering his opinion (Tr. 278-82). Dr. Krueger also evaluated plaintiff's Department of Social and Health Services case file and past psychological evaluations (Tr. 273). Dr. Brown performed memory testing and reviewed the report of Dr. Krueger prior to issuing his opinion (Tr. 665-68). Further, both doctors noted observing plaintiff's symptoms during the examinations (Tr. 274, 666-67).

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination

allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the

psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

While the ALJ discredited the opinions as based on subjective statements and not supported by objective findings, he ignores the fact that both doctors relied on psychological testing, a review of past medical records, and their own clinical observations in rendering their opinions. The ALJ's finding was not supported by substantial evidence, and it was not a specific and legitimate reason to discredit the doctor's opinions.

The ALJ also discredited the opinions because they were done for the purpose of state assistance and assumes that gave plaintiff incentive to exaggerate her symptoms (Tr. 29-30). The "purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). This reason is only relevant if the opinions were based to a large extent on plaintiff's subjective statements, which, as stated above, is not supported by substantial evidence. Further, the ALJ provides no support for the conclusion that the plaintiff was exaggerating because the evaluations were done for state assistance. This assumption

would effectively allow the Commissioner to discredit all state evaluations as well as consultative evaluations done on behalf of the Social Security Administration, which is clearly not reasonable. The purpose of the evaluations was not a specific and legitimate reason to discredit the opinions.

Finally, the ALJ noted that plaintiff's reported activities undermined the reliability of the opinions (Tr. 30). The ALJ did not specify which activities he was referring to; however he did discuss plaintiff's activities in an earlier part of the decision. The ALJ discredited plaintiff's credibility because of plaintiff's reported activities noting that she reported "being able to make simple meals, clean the house and grocery shop." (Tr. 28). The ALJ also noted that plaintiff's activity of caring for her grandchildren and stated that while plaintiff's daughter testified that the children were older and plaintiff was not doing much work caring for them, he found the testimony unpersuasive and found plaintiff's ability to care for her grandkids to support a higher level of functioning (Tr. 28-29).

The ALJ's initial comments about plaintiff's activities were taken from plaintiff's function report (Tr. 28, *citing* Tr. 246). However, a review of the record shows that the ALJ misclassified some of the reported activities. While the ALJ stated that plaintiff could prepare simple meals, plaintiff actually reported that she does not cook, and makes sandwiches or microwavable food (Tr. 28, *citing* Tr. 246). Also, while the ALJ noted plaintiff's ability to clean the house, he fails to acknowledge her statements that her ability to clean is dependent on her symptoms, where some days she is able to clean, and other days she cannot because she is unable to get out of bed. *Id.* Finally, while the ALJ noted plaintiff goes grocery shopping, he again failed to acknowledge that she reported

going grocery shopping one time per month for two hours and reported someone else always goes with her (Tr. 28, 247). The ALJ's statement of the record implies a higher level of functioning that the function report actually depicts. These activities do not undermine the doctor's opinions.

The record shows that plaintiff did care for her two grandchildren after school. Both plaintiff and plaintiff's daughter-in-law testified that plaintiff does not do much for the children and that the children are older and self sufficient (Tr. 52-55, 75-76). Further, both testified that the arrangement was more of a way for plaintiff's daughter to help provide money for her to pay her bills (Tr. 76). While the ALJ finds these explanations unconvincing, he does not provide any support for this conclusion, and plaintiff's babysitting activities are not described anywhere else in the record. Plaintiff's limited activities are not a specific and legitimate reason supported by substantial evidence to reject the opinions of Dr. Krueger and Dr. Brown.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The court noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Molina*, *supra*, 674 F.3d at 1115.The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity

to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)). Here, had the opinions of Dr. Kruger and Dr. Brown been accorded more weight, the disability determination may very well have changed. As such, the ALJ's error in evaluating these opinions was not harmless.

  (2) Whether or not the ALJ properly evaluated plaintiff's testimony.

  The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

  (3) Whether or not the ALJ properly evaluated the lay evidence.

  The ALJ failed to address the lay witness statements made by Social Security worker L. Jackson (Tr. 195). Because we have already concluded this case should be remanded for further proceedings, the ALJ should also consider this statement upon remand of this matter.

  (4) Whether or not the ALJ properly assessed plaintiff's residual functional capacity and whether or not the ALJ erred by basing his step five finding on a residual functional capacity assessment that did not include all of plaintiff's limitations.

  Similar to the ALJ's credibility determination, the ALJ's RFC finding and step five determination are based in part on an assessment of the medical evidence. Because

we have already concluded the medical evidence should be reassessed on remand of this matter, the ALJ should also consider anew the plaintiffs RFC and whether plaintiff is capable of performing work in the national economy.

   (6)   Whether or not the new evidence that was submitted to the Appeals Council shows that the ALJ's decision was not supported by substantial evidence and/or was based on legal error.

Upon remand, the ALJ should evaluate this new medical evidence as part of the record as a whole.

## CONCLUSION

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on July 25, 2014, as noted in the caption.

Dated this 30th day of June, 2014.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 13